15 minutes aside and it is Cook County versus the State of Texas and good morning Mr. Wilson. Good morning your honor. How are you? Quite well thank you. Okay you I I'm going to start you off forgive me for not even letting you say a word but I need to do this. It's sort of bottom line. If we held that the denial of intervention here was an abuse of discretion what would the next step be? You see at this point of course the public charge rule has been revoked. A relief is available is the only issue still before the district court the Fifth Amendment equal protection claim. Well your honor I think prior to us being allowed to intervene I think that's certainly true. I I think I can I think our path to relief is fairly straightforward though perhaps a bit winding but I do think it's fairly straightforward. What we'd like to do is intervene in the district court for purposes of seeking Rule 60B relief. As a party we are we would be entitled to seek that relief. It's clearly sort of a difficult standard but I think that's the remedy that remains available to us. There are a couple of things we could do from that from the denial of that we could bring it to that we could bring it to this court and ask this um we're certainly aware of this court's previous decision on the preliminary injunction and have said that we think it's the law the law of the case at a minimum. It's obviously of course the circuit's precedent as well but we could do a couple of things. We could ask the en banc court to reconsider that or we could take that to the Supreme Court with the petition petition for writ of certiorari. Will you tell me why isn't the proper option here an APA action challenging the revocation of the rule without notice and comment? Absolutely, Your Honor. If perhaps Your Honor has reviewed the transcripts of their own argument the Supreme Court recently did there was a good bit of discussion about that. I'd make it I'd First, we told that we told the district court that we don't think we could do that when when my friends on the other side we conceded say we conceded something. I think what we were saying was we don't think we could bring that type of APA challenge. There are a couple of problems. Could I just clarify then you were saying I mean I read that exchange as well. You were saying that a freestanding challenge brought by the state of Texas et al. claiming that the revocation without notice and comment was not something you thought you could do. I mean I that looked like waiver to me. It seemed that if you were conceding that then it took it off the table for the judge. Well, Your Honor, we haven't we haven't brought that claim. I think that's I think that's what. But wouldn't that claim be a separate suit? Why would that claim have to be folded into this it would be a separate suit. Okay. I think. Okay. I think you've really. Okay. And now. I would like to if I may, Your Honor, I would like to explain a couple what I think the problems are with that. First, because the Northern District of Illinois judgment exists that probably does constitute good cause and that's why we need to that's why we're here trying to find a way to attack that judgment. The second point I would make is even if we were successful in that suit, sort of against what we against what we expect would happen, the Northern District of Illinois of Illinois judgment would still exist and they're still vacant of the rule. So even supposing we got it back in the Federal Register, the rule itself would still be vacated and so I don't I still don't think we would have the relief we're seeking here. Is it too late for you to bring an APA suit? Could you still do that? I believe we could, Your Honor. The I haven't I have not investigated sort of because it's something we don't think we can pursue. I haven't investigated sort of every detail of that, but I believe it's something we could still bring. And is your challenge here, Mr. Wilson, to the lack of notice and consent with the vacature of the rule or is your challenge to the nationwide injunction that I know it wasn't a nationwide injunction but effectively it's a nationwide injunction from the District Court? Your Honor, we certainly think that the District Court's judgment is wrong with respect to this court's opinion. I would point to what a panel of the Fourth Circuit said, what the Ninth Circuit said. I understand that, but that that's separate than what I asked is the is part of what's wrong with it the consequence that you did not get to challenge the vacature of the rule through notice the notice process or is it the nationwide injunction that impact of it or is it both? I think it's both. I think the states have articulated two separate theories of harm. One theory of harm is harms that run to the state's public fisc where in the original rule. So what's your evidence of that? I found that underdeveloped, I guess I'll say, because there was a mention of an amount of money in the original 2019 rule, but then further information suggests that somewhere between three and five people in the country have been affected by the 2019 rule and we don't even know if any of them is from Texas or is from, you know, Oklahoma or anywhere else. The record is is very thin on whether there is in fact put predictions to one side in fact any impact. Sure, Your Honor, I would raise a couple of points. First, DHS did cost the states a billion dollars. But now we have data, though, from a year. I think it's certainly correct that that counts applications of the rule. I mean there may be, there are a couple of points I'd like to make on that. One, it was only a year. The rule was under challenge much of that year. It was also an extraordinary year in many respects. The other point I would like to make. A year in which more rather than less medical assistance was necessary. I certainly wouldn't disagree with that, Your Honor. The other thing I would say is that that's talking about applications of the rule. I mean the rule may have various secondary effects which nonetheless save the state's money. The other point I would make. Is that something that would be relevant to discovery if this goes back to the district court? I don't think we, I don't think we need discovery, Your Honor, to make the point we're trying to I would point out that the the district court thought that we had standing sort of as a mirror image of the plaintiffs in the original case having standing Cook County and ICER. But see that, I'm not even sure that's right because I can't see any interest that the states are asserting that's concrete and imminent. You're talking about what I would think of as naked procedural rights. So for example, you admit that you could bring an action under the APA challenging, let's say, the vacatur without notice and comment or just an action saying that you don't think that DHS is properly interpreting the statute, all the positions that you're taking. And so you have an avenue. What you're losing, as I understand your briefs, is Chevron deference toward a rule that is already in place. Which sounds like just a procedural switch to me. And, you know, the state is all too quick to say a naked procedural interest isn't enough to support standing in many other contexts. So I don't know why it is here. Well, I mean, to be clear, Your Honor, we do think we have a significant, we do think we have significant monetary interest. The other thing I would point out is But when standing is challenged, you have to back it up. Sure, Your Honor. The other thing I would point out is that there is a estimated cost to the states in various ways there against a couple of different baselines. One with a 1999 guidance baseline and one with a no 1999 guidance baseline. In either event, DHS estimated that that would cost the state's money as well. Why isn't the thing to do to give up this defunct case and make your comments in the notice and comment, bring an action, you know, assert the rights that, you know, you believe will be impacted by all of this? Your Honor, the comment, I mean, the comment period is still open as to the NPRM. I can't speak to what, I apologize, Your Honor. Well, I mean, you know, the real complaint here is with the summary rescission of the public charge rule without notice and comment. That's certainly a proper issue in an APA action, not this action. I mean, I keep wondering precisely what Judge Wood is wondering. Well, I mean, again, Your Honor, I think I sort of discussed the reasons we think it would be very difficult to have an APA action and why that APA action wouldn't give us any relief anyway. Can I just interrupt and ask why comparatively is that harder than if what you said at the outset of this argument in response to Judge Rovner that if you got everything you're asking for here, if you were allowed to intervene, the best you could hope for is to go back to the district court and file a 60B6 residual clause action where the district court at that point, you know, has tremendous discretion. 60B6 is not a substitute for appeal. We say that repeatedly as does every other court in the country. So I don't know why relatively you aren't actually better off with the APA action. Sure, Your Honor. I mean, we obviously think we are entitled to intervene and we think we can bring an appeal or file a cert petition. On 60B6? Your Honor, I think... Where the district judge's original injunction, of course, was limited to Illinois, I understand the vacatur order was taken by DHS as a good reason to erase the 2019 rule from the Code of Federal Regulations. But isn't your real beef with DHS and its new action based on that order? Your Honor, we certainly think that DHS, you know, if not strictly speaking violated the APA, certainly made an in-run around the APA. But where's your evidence for that? I mean, you think they should have done a stay in abeyance. But the data, you know, experience shows that agencies have the right to move in a number of different directions. And in fact, when the courts start telling the executive branch which cases to pursue and which cases not to pursue, we pointed to quite a few cases in our brief where the government has, in fact, sought abeyances. They sometimes stay and obey, no question about it. And they sometimes abandon. I would also point out that we pointed to several sources that show that that's sort of the standard course. Also, Judge Van Dyke's dissent in the Ninth Circuit. But you needed to show something that was compelled. And you didn't. Well, Your Honor, I think what we have, let me try a slightly different tack. Sure. In reviewing the argument transcript from the Supreme Court in the Arizona case, I think it's fair to say that the principal deputy solicitor general said that they had not been able to identify any case quite like this one either where certiorari was, where the Supreme Court had granted certiorari. The United States had successfully defended the rule on appeal in multiple circuits, obtained stays of every adverse judgment, and then sort of, without warning or notice to anyone, dismissed all of those cases. I think the words military precision were used. We think that we certainly don't disagree with the proposition that the government can sometimes not take an appeal. Well, and you know, Texas might be in a different situation come January 2025 where a bunch of rules might be considered no longer reflective of a new administration's policy. You know, Your Honor, I think that is certainly true. But I think that illustrates sort of the problem, which is if this is a sort of stratagem that courts bless to sort of what we think is making it run around or evade the APA notice and comment procedures, I think we're going to see this many more times in the future. And really the only way to avoid that is going to be for states or other parties to file hundreds or thousands of intervention motions on the district court's reasoning probably before inauguration if a president has made, or a president-elect has made a public statement critical of something the prior administration has done. You know, our review is a limited one, and we have to stay with the abuse of discretion standard, which ultimately would control the disposition of the appeal. The district court's opinion was careful. It was detailed. Judge Feinerman recognized the validity of the various entries and ultimately weighed the equities and denied intervention. There's no misunderstanding of law or fact or other red flag, I think, that would, you know, warrant some determination that the denial of intervention was not a proper exercise of discretion. Your Honor, I see I'm almost out of time, but I'd like to, I don't know that I've had an opportunity to run through the district court's analysis yet, and I'd very much like to do so. And Judge Rovner, if it's okay with you, I know we're going to run over, but I have a question. Of course, and look, this is very important, and of course I'm going to give you your five-minute rebuttal. Thank you very much, Your Honor. Before you start that, Mr. Wilson, on the abuse of discretion and the Rule 24 intervention here, what, the court seemed to look at the time that you moved to intervene in the Seventh Circuit as the relevant time period. Why would that be relevant rather than the time you moved to intervene in the district court, which was about two months later? I think it's, well, we moved to intervene, we moved to intervene in this court on March 11th. In this court, not where the case was pending. We asked this court to recall the mandate, which the court obviously didn't do. We then went to the Supreme Court. The Supreme Court, you know, expressly told us that its denial was without prejudice. We think that was effectively telling us to go back to the district court. We promptly did that. Why didn't you start there, and why wouldn't, in looking at the timeliness of this, why wouldn't we look at when you actually motion in the district court as opposed to here? Your Honor, I mean, I think the most straightforward answer is because we were actively litigating our intervention in other courts. Well, that doesn't impact the Northern District of Illinois suit. You can't say I'm excused from intervening here because I've been trying to intervene in other districts. No, no, no. I certainly don't mean other districts. I mean, we were actively seeking to intervene in this court and then filed a motion in the Supreme Court. And when you say this court, it's the Seventh Circuit. So my question is the case was still pending in the district court. There was an active case going on there at the time. And what is before us today is whether or not the district court abused its discretion in ruling that your attempts to intervene there were untimely. And my question to you is, when we're assessing timeliness, do we assess it based on when you tried to intervene in the district court? Because it seems to me the May district court date is what should be the effective date we're looking at. We certainly think it's the 11th when we tried to intervene. I understand you do. Why? Why should we look at when you tried to intervene in the Seventh Circuit as opposed to when you tried to intervene before the district court where the active case was? What supports your argument? Your Honor, I think we tried to move where the case had most recently been. I understand that the mandate had issued. But it was active still in the district court. What I would also say is... Because it was an interlocutory appeal. I mean, that's what Judge St. Eve is saying. Right. I understand that, Your Honor. I mean, the other thing I would say is I don't know that the... I think all of the relevant pieces of information that the district court pointed to were either in sort of November or December of 2021. There's the February 2nd executive order. And then there are various status reports running through March. So I'm not sure that the... The only thing that happened in the district court in the March to May period, I believe was... I believe effectively nothing happened until we tried to intervene. That's... Well, the case was still active. And there was a two-month period there between when you tried to intervene in the Seventh Circuit and when you tried to intervene in the district court. And given that the case was still active in the district court, that just seems like a long time to wait. And I know you've argued that we should assess the timeliness based on when you tried to intervene in the Seventh Circuit. But I don't understand why we wouldn't assess the timeliness of when you tried to intervene in the district court. Sure. I mean, that's certainly a matter of strategy that we adopted. What I would say is... But why? And also keep in mind that the timeliness inquiry looks at when this... When you should have been aware of that threat. And the district court set forth a timeline of events that should have alerted the state interveners to the need to intervene many months early, including court filings indicating the doubt as to the government's intent to proceed with the litigation. And all we have to do is look at NAACP. Well, Your Honor, I would like to go through that timeline. First, I think the district court pointed to several of then-President-elect Biden's statements. We think under the Supreme Court's recent decision in Cameron that those don't count. But what about the DeVos case? I mean, the state of Texas itself relied on similar statements there. Oh, sure, Your Honor. I think the most obvious difference between this case and the DeVos case is there's a difference of... There's a circuit split as between the D.C. Circuit and this court as to the sort of presumption of adequacy of a government litigant. We think based on that, the law in the D.C. Circuit was different, and we had a better argument to intervene there. Also, a much earlier point in the case. I'd like to make two more quick points. We don't think that the executive order shows that we should have been on notice. The executive order just asks for a review of... For DHS to conduct a review. The review was not even scheduled to have been completed by the time the events on March 9th occurred. And third, I would point out that all of these things were public and available, and the Supreme Court recently heard a case arising from the same facts out of Arizona. And the government doesn't even a timeliness argument there. I think that's telling. I see that I'm well over my time, so I'm happy to... But we've peppered you, so it's not your fault. Thank you. And maybe it is. Who knows? No, it isn't. All right. Who wants to come up? Mr. Sinzdak or Mr. Rothheim? This is Mr. Sinzdak, Your Honor. May I please report? Jerry Sinzdak, appearing on behalf of the United States. The sole questions here are whether the district court abused its discretion in concluding that Texas's motion was untimely, and in the alternative, whether it abused its discretion in concluding that Rule 60B relief was inappropriate here. Under the facts and circumstances presented, neither decision was an abuse of discretion, and this court could affirm on either ground or on both grounds. So is it your position, Mr. Wilson said that if the states were to prevail here and intervene, they would go back to the district court and ask for 60B6 relief. The district court, of course, has already indicated its view about whether 60B6 relief is called for. So are the states asserting something that's actually a live controversy or some right to reopen or ask, in a sense, for a motion to reconsider, which I guess would be piled on discretion? I think that's right, Your Honor. I mean, we think it was not an abuse of discretion. The district court, in the Rule 60B motion, didn't ask the district court to alter its judgment or amend it in any way. They simply asked it to reenter the identical judgment to reset the clock. So it's clear what they're seeking is a second bite. The apple would be a third bite, I suppose, if it went back to the district court. Yet again, and this court has said on many occasions that that use of Rule 60B6 is improper, that a party that could have raised issues on direct appeal or could have sought to intervene on direct appeal and fails at doing that isn't allowed to go back and seek a collateral review and get a second bite at the apple. So let me ask you one aspect of this case that's concerning to me. Mr. Wilson, one of his final points was that the way the government proceeded in this case to just drop everything, you know, on a moment's notice, more or less, or maybe on five months notice, but to drop everything as opposed to simply hold things in abeyance is unprecedented. I take it that the states are not saying that the APA requires notice and comment rulemaking before such an action could be taken. So I would like you to tell me, you know, are there other examples of the government choosing simply to drop a case in court as opposed to take a more soft approach to this? Sure, Your Honor. I mean, there are numerous examples. I think our brief points out any number of cases where the government has decided not to appeal an adverse decision or seek further review, has dropped an appeal that was previously brought, or has dropped a cert petition that was previously filed. And those are in cases involving rules where the rule was set aside for substantive reasons, even as violating the Constitution, so it couldn't be reenacted. And like I said, we cite a litany of those in our briefs. But are there cases where the rule at issue was vacated as a result of that court ruling and no notice and comment period happened? I believe so, Your Honor. Yes, I mean, I think it's the government's position that that provides good cause in district court order. Now, I will say, I know there's been a lot of talk about this concern about APA evading notice and comment. As Your Honor pointed out, they don't argue, Texas doesn't argue that this was in violation of the APA or its judicial review provisions. And we think the solution going forward is not to grant intervention or expand intervention, or to expand Rule 60B relief beyond its bounds. The answer is, in the appropriate case, to hold that a district court lacks the authority, except in rare circumstances, to grant nationwide injunctive relief. And that would solve the problem of a single district court decision, you know, invalidating a rule across the country. So one of the things that we look at and evaluate in the timeliness is the impact or the prejudice to the proposed interveners here. And they've argued that the prejudice is there's now this effective nationwide injunction that impacts them, and there was no notice and comment with the vacature of the rule, and they can't challenge the nationwide injunction against them. How do you respond to that, and how should we factor that into the abuse of discretion analysis for the timeliness? Sure. And one thing I want to be clear about, because I think Texas' counsel suggested that they're challenging the nationwide vacature, and they are not. I don't see any aspect of their request for Rule 60B relief that suggests that the court could grant intervention to narrow the injunction. So could I just get some terminology straight here? Judge St. Eve just spoke about the ability to challenge a nationwide injunction. You just mentioned the ability to challenge the vacator of the rule, which has, I mean, once it's erased from CFR, it's gone, and it has nationwide effect. Now, the reason, as I understand it, that DHS removed that rule from the Code of Federal Regulations was because of the district court's decision itself to vacate the rule with nationwide impact, unlike its earlier injunction, which had said, Illinois alone. So I guess we're just assuming that once it's, in fact, he said this is going to have nationwide effect. So right now, though, what we're talking about is the absence of a rule, and the absence of a rule has nationwide effect. It's the distinction between a nationwide injunction and the absence of a rule, and DHS's reason for erasing the rule being the rationale of the district court. That's what excused it from notice and comment under the provisions of the APA, right? Right. So I want to be clear. I don't mean to suggest it was a nationwide injunction. It was actually a nationwide vacator. So I don't know if there's much of a distinction there. Had the same effect. Had the same effect, but that wasn't the reason. Now there isn't one anymore, but except it doesn't have the same effect if the executive branch removes it from the CFR as opposed to a district court judge saying, you must remove it. Right. So, Your Honor, I agree with, I think, the point you're trying to get at, which is we may have disagreed with the district court's decision to issue a nationwide vacator, but once we chose not to appeal, that became a final judgment, and that final judgment, which of course isn't, you know, the executive branch follows the final judgments entered by district courts, and there wasn't a final judgment vacating this rule nationwide, and so then it relied on that or followed that decision to vacate it. Well, normally the Solicitor General's Office reviews all cases in which the United States has an interest and decides whether an appeal should be taken. That's absolutely routine. That's right, Your Honor, and that's happened in this case, and there are a number of factors and whether the government agrees with the decision is certainly a factor to be considered, but there are a number of others, and I'm happy to explain why an abeyance, which the government clearly often does, but wasn't, that there are aspects of this rule that distinguished it from cases in which the government would seek an abeyance, and I also just want to point out, Your Honors are aware, of course, that, you know, Texas complains about lacking notice and comment abilities, but the agency decided in March to work on a new rule. It has, in fact, issued a new proposed rule a couple months or a month ago or so, and there's a comment period. It's still open. Texas could comment on the new rule, could raise any objections it has, could argue for a new rule, and if it's unhappy with the rule that comes out, of course, it can seek APA review at the end. It has done none of those things, has it? Well, it is true that up until this intervention motion and Rule 60b motion, it hadn't participated. It didn't comment on the 2019 rule. It didn't participate in litigation. It didn't comment on the advanced proposed rule that DHS issued. There's still time for it to comment on the new rule, the proposed new rule. And it could say you should have a more stringent standard for dependents. Of course it could, Your Honor, yes, and I think the NPRM recognizes the existence of the 2019 rule and explains in detail the problems with that rule and why the agency thinks the new rule is superior. So, you know, Texas can challenge that or comment on that logic if it likes. If that's enacted, if the new rule goes through the process and is enacted, would that moot this case? We believe it would, and in fact, on page 30 of Texas's opening brief, they acknowledged that it would moot this case. Would you be kind enough to discuss, you know, Arizona versus San Francisco, you know, where the justices on the court raise the equities that are where we have the government using a nationwide vacature? And, you know, can you address the concerns as you view them of those justices that the equities in such a situation may favor intervention as it applies to us? Sure, Your Honor. I mean, there are lots I could say about that case in the oral argument. I guess I would start with, you know, we think the appropriate solution which we set at the argument there as well as to make clear that nationwide injunctions or nationwide vacatures are inappropriate and that would solve any concerns about a single district court opinion resulting in a nationwide vacature. I think I also just want to be clear because I know a lot of... You are saying that right now to us, right? Yes, I am saying that the solution is not to expand intervention or to expand Rule 60B relief, that it would be to... If the concern is about the equities of a situation, and we don't think there should be a concern, and I'm happy to explain why abeyance wasn't appropriate here. We had a rule that was not having its intended effect. It was, in fact, having a substantial chilling effect on individuals applying for benefits, and that was an unintended consequence, and if the rule had stayed in place, that would have been a problem as well as intrusive discovery. So I don't know if that's exactly responsive to Your Honor's questions. I think there are ways to ensure that if Your Honors have qualms about what happened in terms of a single district court issuing a nationwide vacature and then the government not appealing that, which it often does not appeal judgments, the solution is in holding that nationwide injunctions in the appropriate case. I don't think this is one, but in the appropriate case that that's improper, not to conclude that intervention should be expanded or Rule 60B relief. I don't think the concern is that the government didn't appeal. I think the concern is the fact that the decision was then I think just kind of a natural effect of once the decision based on a range of factors was made not to pursue further litigation. I mean, couldn't the government have done much the same if a district court, you know, the Southern District of Ohio, you know, had issued an opinion limited to the Southern District of Ohio about this and the government read it and said, you know, that's very persuasive reasoning. We are going to abandon this rule. We're going to do exactly what has perhaps if the government decided to vacate it nationwide based on a limited injunction, limited vacater. Well, it wouldn't depend on the rationale. It would depend on the rationale. Texas could challenge. If it goes into the history of the rule or, you know, the degree of Chevron deference is applicable or anything. I mean, I think it would also depend on the rationale the agency gave for using that decision to vacate it. Here, there was nothing that could be done. It was nationwide injunction. Unless you had decided to challenge it on appeal. Right. I mean, obviously that could have. But that decision was not made. And as I alluded to, I think there were factors at play here that made a decision not to seek an advance. And I would also point out, I know Texas has emphasized the unique nature of this case and how these circumstances didn't exist. And we agree there aren't a lot of cases where, although the government does this constellation of facts and circumstances occurred, but that was all the more reason for Texas not to assume the government was going to simply take what it describes as its typical approach. That was all the more reason to make its voice heard, which it hadn't previously done at any point. Mr. Sensen, can I ask, I'm sorry, Judge Roper, go ahead. No, no, please. I'm going to ask you the same question that I asked of Mr. Wilson. You're here on the appeal from the 60B relief. In the motion to intervene, the court, as you know, denied the motion on timeliness grounds. What is the time that we are looking at for that? Is it the time that Texas attempted to intervene before the Seventh Circuit? Or is it the time that Texas attempted to intervene before the district court? And if you think it's a former, why? So we think it is the former. I obviously the district court gave the benefit of the doubt to Texas. And we would agree that even if you take it as March being the relevant date that it was untimely because it allowed five weeks to go by while the government was deciding on a strategy. But obviously it could have intervened in the district court before May. It could have even after it waited for this court's decision, which was very quick. So it could have gone in late March to the district court instead of going to the Supreme Court. It didn't do it then either. And it did result in a prejudice to the government and to the parties, particularly DHS had issued guidance those extra couple of months. Texas is saying nothing happened in those two months. But DHS had issued guidance to the public about the vacatur of the rule and going forward. So therefore, at that point, if Texas is permitted to intervene and revive the case, then DHS has to go back and inform the public about the possibility that the rule might be coming back. And that ping-ponging effect is very prejudicial to the agency as well as to the general public. Okay. If I don't let Mr. Rodheim speak, he will not speak to you. Thank you, Your Honors. Let's have Mr. Rodheim. Good morning. Good morning. And may it please the court. Judge St. Eve, I'll start directly with the question you posed. We also think the May date is the relevant date to analyze the timeliness question. The states made a strategic decision to intervene at this court in March, hoping that it would benefit them for whatever reason. It didn't. And during those two months where it appealed to the Supreme Court hoping for relief and didn't move to intervene at the district court, particularly the plaintiff of the Illinois Coalition of Immigrant and Refugee Rights suffered prejudice. As this court knows, ICER had a separate equal protection claim that it had against DHS. And the sole reason ICER agreed to dismiss that equal protection claim was because DHS withdrew its appeal, agreed that the district court's partial final judgment would go into effect, and the rule would no longer be in effect. That was all part of the settlement. I would call it a de facto settlement. Are you calling it de facto because it wasn't written down on a piece of paper? It wasn't as if ICER and the government got on the phone and said, if you do this, we'll do that. But in the joint stipulation of dismissal that we filed, the district court makes this clear, ICER dismissed the equal protection claim expressly in reliance on DHS's decision to drop the appeal. And you knew they were going to drop the appeal before the two days that they did, I assume. You were having some kind of discussion. True. And we filed joint status reports with the district court. So we were in communication with the government. And those joint status reports, which the states rely on in their brief, made clear that we were not going to drop the equal protection claim until we knew for sure that the rule would no longer be in effect and the district court's vacator would go into effect. And that alone, even putting the February 2nd date aside, and we think the district court was correct to say by February 2nd in culmination with all of the high profile public statements and candidate Biden made throughout the election. But February 2nd takes it beyond the somewhat troublesome source of campaign promises, which sometimes are looked at and maybe often are not. The Trump against Hawaii case is out there. I mean, we've all seen political campaigns. But the February 2nd statement is after President Biden is securely in office. That's right. That's right, Judge Wood. And we think the statements made prior are relevant and they informed what the state should have known when that February 2nd statement was made. And at the district court, at the hearing on the motion for intervention, the states agreed on the record that it was aware of its interest for some time. It agreed on the record that it was keeping tabs on the litigation. So you're basically making a practical notice argument. Although there was no formal notice and comment when the rule was vacated, there had been quite a lead up of kind of practical notice that this might happen. That's right. And again, we think the February 2nd executive order kind of is the culmination of all of that. Even putting that date aside, the status reports that the parties jointly filed at the district court throughout February, making clear that DHS was considering the next step in the litigation, making clear that the equal protection claim could be dismissed depending on what's decided, and also making clear that ICER was not going to dismiss its equal protection claim and would not agree, willingly, to stay its equal protection claim until the rule was no longer in effect. And of course, it wasn't in effect because this court had stayed the district court's final judgment. Right. So all that is relevant to the district court's timeliness decision. And the district court, as Judge Robner said, issued a very well-reasoned opinion, kind of setting forth his reasoning. And going back to my initial point- So is the timeliness factor here, I mean it's a very factually dependent point, meaningfully different from what the Supreme Court is looking at in the Arizona litigation? We think it is, for a couple reasons. One being the equal protection claim. The prejudice is part of the timeliness inquiry, that's a prong under the factual determination. And the equal protection claim we had is a unique feature of this case that wasn't present in the Supreme Court argument and makes it different. There was also some talk at the Supreme Court argument about the state's only waiting two days to intervene in this case, and we just disagree with that. Again, we think that they should have intervened at latest right after February 2nd, and then there were the status reports. And going back to my initial point, they could have intervened any time between March and May. Had they done that, had they intervened timely, we wouldn't have dismissed the equal protection claim. It wasn't clear to me in the argument that all of those factors from this case were before the court. That's exactly right. They may have been, but it didn't appear to be based on the questioning, nor it's a different case, so nor would it have been expected. That's exactly right. We don't think the transcript of the Supreme Court argument really has any play here. I know the states relied on the transcript heavily in its reply brief, but again, we disagree fundamentally with the comment about the delay only being two days for all the reasons we've discussed this morning. We disagree, and I don't know if we need to get into this now because it's not an issue here, but we disagree that there was a nationwide injunction. We think there's a APA shall set aside language and a preliminary injunction, and as Judge Wood, you noted, the district court's preliminary injunction here was limited to the state of Illinois. So I know that's a complicated question, and there's scholarly debate about it. We don't think it's fully relevant here, but we think the APA set aside language is valid grounds for the district court to issue a vacator that applies. Wouldn't it be relevant though to the potential impact on the to use the good cause exception to remove the rule? I think they could have done that, even if it was a... Judge Feinerman's opinion, we think, was very well reasoned. He issued an opinion. He issued a preliminary injunction opinion. This court affirmed that preliminary injunction opinion about why the rule violated the APA. Other courts of appeals have affirmed why the rule violated the APA. I think there was no court of appeals that went the other or with an opinion that wasn't vacated. The Fourth Circuit, I know, did, but that opinion was vacated to be reheard en banc. So we think even if the district court's vacator didn't apply nationwide, the government could have taken the same action. So at some point, maybe that's an interesting question for courts to consider, but not necessarily one that needs to be decided today. Okay. Is that it for you? Yes, unless there's other questions. Thank you. Well, thank you. Mr. Wilson? Your Honor, since I went over my time before, I think I'd just like to briefly make a couple of points. First, as to the Supreme Court argument, I don't want to overread the transcript, but I would say that quite a few of the justices expressed some sort of concern about circumvention of the APA. We think that the questioning reflects that. We think it's also an important value that the APA gives us a procedural right to notice and comment. I would say as to whether we have commented, my understanding is it's correct that we did not comment on the 2019 rule. I believe it's the case that we were pleased with what that rule was going and saw no need to do so. And we still have opportunity to comment on the current NPRM. But what I would say about that is it's a fundamentally different proceeding where you're writing a new rule on a blank slate as it gets- That's the procedural difference that I was pointing to before. Obviously, if you're defending a rule that's already in place, you have the benefit, whatever it may be. Some of the justices don't like Chevron either, but for whatever it's worth, you have Chevron. Whereas if it's a new rule, you're on a clean slate. Well, it's true, Your Honor. And we think there are various differences between sort of- Procedural differences. ... repealing a rule and writing on a blank slate. There are procedural differences. There are under Fox v. FCC, there may be some differences within what the agency is required to do. I'd also like to address the notice of appeal point. It's certainly true that you can't use a Rule 60b motion as a general proposition to evade a notice of appeal. What I'd like to point out is that I think the time to file a notice of appeal ran on something like January 2nd in this case. And I think on the judgment, I believe, was November 2 and the notice of appeal would have been 60 days. In any event, it was in January. January 4th is when the time for appeal expired. My apologies. I was off for a couple of days. The point I would like to make with that, Your Honor, is sort of- But don't those couple of days matter? No. Your Honor, I certainly agree that one should be extremely fastidious with knowing precisely when notices of appeals are due. In any event, what I would say is under sort of any theory other than the candidate Biden statements put us on notice and we must have known then theory, the notice of appeal would have run before we would have been on notice under any theory. We obviously disagree with all of them, but the Department was still defending the rule at that point. They filed a cert petition on January 19th. I feel like it's a casablanca situation, though, honestly. I mean, once Texas's efforts to challenge the election results were put to bed by going on in the casino, that the Biden administration did not share the philosophy of the predecessor administration on this rule? Your Honor, at that level of generality, I think the answer is certainly there's not a real surprise there. On the level of generality of would the set of specific actions take place, I think we were surprised. I mean, it looks particularly like this one where, you know, the government defends a rule for a long time, extremely successfully gets certiorari, then dismisses everything. I do think it's sort of a level of generality question. Unless the Court has further questions, I don't have anything else. Wow. Talk about looking at gift horsing in the mouth, but that's fine. Thank you so much to both, to all parties, and the case will be taken under advisement.